## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANK BERGMAN, | |
| Plaintiff, | |
| v. | Case No. 3:24-CV-02374-NJR |
| ST. CLAIR COUNTY, ILLINOIS, MARK KERN, HERB SIMMONS, and BOB JONES, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This employment discrimination case arises out of the alleged wrongful termination of Plaintiff Frank Bergman ("Bergman") from his position as the Director of Human Resources for St. Clair County, Illinois ("St. Clair"). (Doc. 1). Bergman brings this action against St. Clair; Mark Kern ("Kern"), the Chairman of St. Clair's Board; Herb Simmons ("Simmons"), the Director of the St. Clair Emergency Management Agency; and Bob Jones ("Jones"), the "Assistant State's Attorney in St. Clair"[1] (*Id.* ¶¶ 11-14) (Kern, Simmons, and Jones are collectively referred to as the "Individual Defendants"). Bergman advances claims for (i) violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* ("IHRA"), based on disability discrimination against St. Clair (Count I); (ii) violation of the IHRA based on retaliation against St. Clair (Count II); violation of the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601, *et seq.*, based on retaliation against St. Clair

---

[1] Jones' position as an "Assistant State's Attorney" is disputed, as Jones claims he is an attorney in private practice with no formal affiliation to St. Clair. (Doc. 15, p. 1).

(Count III); and (iv) defamation against the Individual Defendants (Count IV). (*Id.* ¶¶ 42-87). On December 2, 2024, Jones filed a motion to dismiss Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14). Kern and Simmons filed their own motion to dismiss Count IV a few days later. (Doc. 20).

BACKGROUND

On June 1, 2011, Bergman was hired as the Human Resources Director for St. Clair. (Doc. 1 ¶ 15). During this time, Bergman performed his job responsibilities in a "satisfactory" manner, and, in January 2023, was nominated and unanimously approved to serve as St. Clair's "Human Resources Manager" and "Privacy Manager." (*Id.* ¶¶ 17-18). At some point in the fall of 2022, certain employees reported instances of sexual harassment and discrimination to Bergman. (*Id.* ¶ 20). Bergman's investigation of these claims also revealed "other instances" of sexual harassment and discrimination, including "multiple instances" involving "inappropriate actions" by Jordan Simmons, the grandson of Defendant Herb Simmons. (*Id.* ¶¶ 21-22). Bergman reported these findings to his superiors, including "multiple managers, supervisors, and attorneys for St. Clair." (*Id.* ¶ 23).

In or around February 2023, Bergman was instructed to cease his investigation into complaints of sexual harassment and discrimination. (*Id.* ¶ 24). On February 16, 2023, Bergman met with Kern, a Debra Moore, and St. Clair's outside counsel, where Kern informed Bergman that Jones had recommended his termination. (*Id.* ¶¶ 25-26). Bergman also learned at this meeting that he would be removed from the investigation. (*Id.* ¶ 27).

On February 21, 2023, Bergman told Office Manager Lisa Powlowski and one of

his assistants, Celene Enriquez, that he intended to take leave under the FMLA to undergo a surgery that was scheduled for May 2023. (*Id.* ¶¶ 28-29). While he was on leave, Bergman informed St. Clair that he was dealing with certain "health issues." (*Id.* ¶ 31). On May 3, 2023, Bergman's doctor completed certain FMLA documentation, indicating Bergman's need to be off work until July 3, 2023, because he was undergoing surgery. (*Id.* ¶ 32).

In early July 2023, St. Clair terminated Bergman's employment before he returned to work. (*Id.* ¶ 34). Bergman was terminated even though St. Clair had, until then, maintained a "regular practice" of allowing employees to take more than 12 weeks off as a "reasonable accommodation for health issues." (*Id.* ¶ 35).

After Bergman was terminated, Kern allegedly told several employees of St. Clair, including Jones and Simmons, that Bergman had experienced a "mental breakdown." (*Id.* ¶¶ 37-38). Jones and Simmons, in turn, shared this "false statement" with other employees, including Austin Thomas, who, in turn, reported it to others. (*Id.* ¶¶ 40-41). These statements allegedly "falsely imputed to [Bergman] a want of integrity in the discharge of the duties of his employment." (*Id.* ¶ 83). Bergman also claims that they "caused actual harm to [his] reputation and standing in the community." (*Id.* ¶ 84).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual

allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must 'ask itself *could* these things have happened, not *did* they happen.'" *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This means that the plaintiff must offer "some specific facts to support the legal claims asserted in the complaint." *Id.* (quoting *McAuley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation modified)).

## DISCUSSION

The Individual Defendants seek dismissal of Bergman's defamation claim against them. Although they submitted separate motions to dismiss (one on behalf of Jones (Doc. 14) and the other on behalf of Simmons and Kern (Doc. 20)), they raise the same legal basis for dismissal: Bergman's failure to offer specifics about the allegedly false statement that was uttered, including when, where, and to whom, it was published.

To state a claim for defamation under Illinois law, "the plaintiff must set out sufficient facts to show that the defendant[] made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant," and

that the plaintiff suffered damages as a result. *Krasinski v. United Parcel Srv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). "Defamation is the publication of any statement that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" *Madison v. Frazier*, 539 F.3d 646, 652-53 (7th Cir. 2008) (quoting *Seith v. Chicago Sun Times, Inc.*, 861 N.E.2d 1117, 1126 (Ill. 2007)). Illinois recognizes two forms of defamation: *per se* and *per quod*. *Id.* at 653.

"A statement is defamatory *per se* if its harm is obvious and apparent on its face."[2] *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). "Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Id.* This heightened pleading standard applies because "a properly pled defamation *per se* claim relieves the plaintiff of proving actual damages." *Id.* at 461.

Defamation *per quod*, on the other hand, "requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity." *Madison*, 539 F.3d at 653 (quoting *Myers v. Levy*, 808 N.E.2d 1139, 1147 (Ill. 2004)). A defamation *per quod* claim differs from a *per se* claim in that it requires the

---

[2] Illinois recognizes five categories of statements that are defamatory *per se*: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Green*, 917 N.E.2d at 459.

plaintiff to plead "actual" damages, *i.e.*, damages "of a pecuniary nature." *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 999 (Ill. App. Ct. 2021). This pleading requirement exists because, unlike in a *per se* claim, "damages are not presumed in *per quod* claims." *Green*, 917 N.E.2d at 461.

Bergman advances *per se* and *per quod* theories of liability. The Individual Defendants have not tailored their argument to a specific legal theory—they simply contend that Bergman's allegation that they spoke about his "mental breakdown" fails to offer *any* specifics that would allow them to mount a defense. Although the Individual Defendants are correct that Bergman's defamation claim against them fails to state a claim upon which relief may be granted, the reasons for this conclusion are more nuanced.

A federal forum applying the Rule 12(b)(6) standard does not modify the pleading requirements of a defamation claim under Illinois law. *Green*, 917 N.E.2d at 459; *Rivera*, 189 N.E.3d at 999; *D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1094 (N.D. Ill. 2025). "Like Illinois law, federal pleading requirements similarly demand plaintiffs to plead the precise language underlying a defamation claim." *Graves v. Man Grp. USA, Inc.*, 479 F. Supp. 2d 850, 854-55 (N.D. Ill. 2007); *see also D'Ambrosio*, 783 F. Supp. 3d at 1094 ("Requiring a plaintiff to allege the defamatory statements with particularity is not holding him to a higher, fact pleading standard, but rather to require he plead the substantive elements of these torts under Illinois law") (internal quotation marks omitted). The issue here is whether Bergman's allegations can satisfy the pleading requirements of a defamation *per se* or *per quod* claim under Illinois law.

To the extent that Bergman advances a defamation *per se* claim, his allegations lack

specificity. Bergman provides no information about the circumstances of the alleged false statement—where and when it happened and the context in which it was made. The allegation that the Individual Defendants talked about him suffering a "mental breakdown" could mean any number of things: for instance, did the statement imply Bergman suffered from a serious psychological ailment, was it made in reference to specific conduct they witnessed, did it simply convey the speaker's thoughts about Bergman's mental health more generally, similar to the way in which one would talk about a friend or colleague's sprained ankle? The complaint does not say. Bergman's claim is thus, at best, a "summary of [a] type of statement[]" that the Individual Defendants allegedly made. *Green*, 917 N.E.2d at 460. Its perfunctory nature prevents the Individual Defendants from analyzing the allegations against them to determine whether the statement that is attributed to them may be subject to a defense such as the innocent construction rule or the First Amendment's protection for certain statements of opinion. *See Madison*, 539 F.3d at 653 (explaining defenses to defamation *per se* claim under Illinois law). That is a problem for Bergman because the heightened pleading standard for a defamation *per se* claim exists precisely "so that the defendant may properly formulate an answer and identify any potential defenses." *Green*, 917 N.E.2d at 459. In Illinois, a defamation plaintiff cannot expose the court and his adversaries to such a high level of generality. *See id.* at 460 (allegation that defendant published statement about plaintiff engaging in "misconduct with children" and that he "abused players, coaches, and umpires" "d[id] not set forth precise and particular statements so much as plaintiff's summaries of the types of statements defendant presumably made," and thus did not

support defamation *per se* claim). Accordingly, Bergman has failed to state a viable claim of defamation *per se*.

Bergman fares no better if he proceeds under a defamation *per quod* theory. This theory demands allegations of "actual" damages, which are, by definition, *pecuniary* damages. *Rivera*, 189 N.E.3d at 999. Bergman offers only one relevant allegation: the Individual Defendants' statements about his supposed "mental breakdown" "were defamatory *per quod*, as they were false and caused actual harm to [his] reputation and standing in the community." That is not enough. In a defamation *per quod* claim, "special damages must be alleged with particularity, and general allegations as to damages are insufficient." *Bruck v. Cincotta*, 371 N.E.2d 874, 879 (Ill. App. Ct. 1977); *see also Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303 (Ill. 1996) ("A *per quod* action requires . . . allegations of specific facts establishing the plaintiff's special damages."). Bergman's defamation claim alleges neither pecuniary damages nor *any* damages with the requisite level of particularity. He merely claims "actual harm" to his reputation and standing in the community. *See Rivera*, 189 N.E.3d at 999 (allegation that defendant's statements "have caused plaintiffs damages in their business and profession and made it impossible for them to achieve comparable employment in a highly competitive field" was too general to support defamation *per quod* claim) (alterations omitted). At bottom, Bergman's allegations offer "labels and conclusions, and a formulaic recitation of the elements of a cause of action," which is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

CONCLUSION

For these reasons, the Individual Defendants' motions to dismiss Count IV of the complaint (Docs. 14, 20) are **GRANTED**. Count IV of Bergman's Complaint is **DISMISSED without prejudice**. Bergman is **GRANTED** leave to file an amended complaint on or before **October 22, 2025**.

**IT IS SO ORDERED.**

**DATED:  September 22, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**