**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **FRANK BERGMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ST. CLAIR COUNTY,**<br><br>**Defendant.** | **Case No. 3:24-CV-02374-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

In July 2023, St. Clair County ("the County") fired Plaintiff Frank Bergman ("Bergman") from his position as the County's Human Resources Manager. With this action, Bergman claims that the County discriminated against his disability in violation of the Illinois Human Rights Act ("IHRA") when it fired him for taking medical leave (Count I). He further claims that his firing was retaliatory, in violation of both the IHRA and the Family and Medical Leave Act ("FMLA") (Counts II and III respectively).

Now before the Court is the County's Motion for Summary Judgment. (Doc. 37). The County first argues that it is entitled to judgment as a matter of law on Counts I and II because Bergman failed to exhaust his IHRA administrative remedies before filing suit. It further argues that the Court should grant summary judgment on Count I because Bergman cannot establish a *prima facie* case for disability discrimination under the IHRA and, even if he could, the County had a legitimate, non-discriminatory reason for firing him. The County also seeks summary judgment as to Count II, the IHRA retaliation claim,

because Bergman did not engage in protected activity and because there is no causal connection between the activity and his termination. Finally, the County seeks summary judgment on Count III because Bergman's termination was not causally related to his taking FMLA leave.

For the following reasons, the County's motion for summary judgment is granted on all Counts.

## BACKGROUND

Frank Bergman was St. Clair County's Human Resources Manager until his termination in 2023. (Doc. 40 at p. 10). During his tenure, Bergman investigated sexual harassment allegations, including those made against CENCOM[1] employee Jordin Simmons. (Doc. 43 at pp. 4-5). Jordin Simmons is the grandson of Herb Simmons, Director of the County's Emergency Management Agency and a supervisor for CENCOM. (*Id*. at p. 5). In 2021, Bergman ultimately terminated Simmons's employment on behalf of the County. (*Id*.).

In early 2023, Bergman began re-investigating Jordin Simmons, along with other CENCOM employees.[2] (*Id*. at p. 5). The County was aware of these investigations.[3] (*Id*.)

During this period, Bergman suffered from severe right shoulder arthritis. (Doc. 40

---

[1] CENCOM (Central Communications) is the County's emergency dispatch department.

[2] Though the County disputes this fact as unsupported by the record citation, it is in fact supported. *See* Doc. 40-6, 30:20-25, 33:12-34:5.

[3] The County disputes this fact, claiming that it is based on a conclusory declaration by Bergman. However, the Court does not consider the following factual statement to be conclusory: "I made one such report [regarding the CENCOM investigations] during a meeting on February 16, 2023, with Moore, Kern and the County's outside counsel present." (Doc. 40-2 at p. 1). In making this statement, Bergman has appropriately recited specific, observed facts within his personal knowledge. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004) (explaining that a self-serving declaration should be considered on summary judgment when it is based on the declarant's personal knowledge).

at p. 10). Starting February 21, 2023, Bergman decided to take FMLA leave to manage his health issues, eventually opting for joint replacement surgery. (Doc. 40 at pp. 4, 10).

Section 8 of the County's Personnel Code explains that "[r]equests for FMLA leave shall be made through the Human Resources Department on the forms provided." (*Id*. at p. 3). The forms in question require that an employee who is seeking leave due to a serious health condition provide a "medical certification" to support and explain his absence. (*Id*.)

When Bergman made his initial leave request, he did not submit a medical certification. (*Id*. at p. 4). Bergman contends, however, that delayed submission of such paperwork was consistent with the County's customary practice. (Doc. 43 at pp. 2, 7-8). During his tenure as HR Manager, Bergman regularly granted medical leave for more than 12 weeks. (*Id*. at p. 2). He would also retroactively approve FMLA leave for employees who began their leave *before* filling out the required paperwork.[4] (*Id*. at 7-8).

On March 9, 2023, the County's Director of Administration, Debra Moore, sent Bergman a letter reminding him to submit the certification by March 17, 2023. (*Id*. at p. 4). Bergman failed to do so. Moore sent him a second, third, and fourth reminder, extending the deadline each time. (*Id*. at pp. 4-5). In the last two letters, Moore warned Bergman that failure to comply with the County's leave policies could result in his termination. (Doc. 61-2 at pp. 221, 223-25).

---

[4] Once again, the County disputes these facts, claiming that they are based on a conclusory declaration by Bergman. (Doc. 40-2 at p. 3). The Court disagrees. In making the relevant statements, Bergman has appropriately recited specific, observed facts within his personal knowledge.

Bergman still did not submit the required documentation. (Doc. 40 at p. 5). During this time, and until the end of his leave, the County continued to pay Bergman for his accrued sick and vacation time. (Doc. 43 at p. 3).

Finally, on May 4, 2023, Bergman submitted the medical certification. (Doc. 40 at pp. 5-6). The documentation excused his absence beginning May 2. (*Id.*). It did not, however, address his preceding absences from February 21 to May 1, and Bergman never submitted additional documentation covering that period. (*Id.*).

On July 7, before Bergman could return to work, the County informed him that his employment was terminated. (*Id*. at p. 6). The termination letter cited to his "failure to provide the healthcare certifications required by County policies," which resulted in his incurring "multiple unexcused absences in violation of the County's Personnel Code." (*Id*. at pp. 6-7). It also alluded to "several issues of performance deficiencies," without further elaboration. (*Id*. at p. 7)

On October 18, 2023, Bergman filed charges with the Equal Employment Opportunity Commission ("EEOC") for retaliation under Title VII of the Civil Rights Act and for disability discrimination under Title I of the Americans with Disabilities Act ("ADA"). (Doc. 40-3 at p. 4). On April 30, 2024, Bergman received the EEOC's determination and sent a copy to the Illinois Department of Human Rights ("IDHR") the same day, opting out of the IDHR investigation. (Doc. 43 at p. 1).

Bergman filed this action on October 28, 2024, alleging disability discrimination and retaliation under the IHRA and retaliation under the FMLA.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

### I. Exhaustion of Administrative Remedies under the IHRA

The IHRA states that a complainant who receives the EEOC's determination "must submit a copy" to the IDHR "within 30 days after service of the determination by the EEOC on the complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). "Failure to follow this procedure constitutes a failure to exhaust administrative remedies." *Laurie v. BeDell*, No. 16-759-DRH-RJD, 2017 WL 1076940, at *3 (S.D. Ill. Mar. 22, 2017).

The County claims that Bergman did not forward the EEOC determination to the IDHR within 30 days of him receiving it on April 30, 2024. The County's only evidence is that it received notice from the IDHR about the determination on August 14, 2024. (Doc. 37-3). Given this gap between when Bergman should have submitted the

determination (by the end of May) and when the County received it (August), the County assumes that the delay was due to Bergman's failure to timely submit his determination. As such, it argues that Bergman has failed to exhaust his administrative remedies under IHRA and thus it is entitled to summary judgment on Counts I and II.

However, Bergman has produced a copy of the required communication with the IDHR, dated April 30, 2024—the same day he received the determination. (Doc. 40-3 at p. 3). The subject line of the email reads "Frank Bergman v. St. Clair County – Request for adoption of EEOC finding and issuance of RTS." (*Id.*). Along with a copy of this email, Bergman also submitted an email delivery receipt. (*Id.* at p. 8). This receipt is dated July 30, 2024, and the subject line reads "Relayed: FW: Frank Bergman v. St. Clair County – Request for adoption of EEOC finding and issuance of RTS." (*Id.*).

In its Reply (Doc. 43), the County questions the date discrepancy between the email and its apparent receipt. (Doc. 43 at p. 11). The July 30 date is well outside of the 30-day window, and so it once again urges the Court to decide that Bergman has not exhausted his administrative remedies. (*Id.*). The Court declines to do so.

Drawing all reasonable inferences in Bergman's favor as the Court must, the receipt seems to be for a different email altogether. Not only are the dates different, but so too are the subject lines. The subject for the July 30 email contains a "Relayed: FW" that is absent in the subject of the April 30 email. Considering these differences, it is possible that the later email was simply forwarding the timely April 30 message as a reminder to the IDHR to respond. And in fact, just a few days later, the IDHR finally notified the County of the determination.

Thus, at the very least, Bergman has shown that there is a genuine issue of fact as to his timely submission and exhaustion of administrative remedies. Accordingly, the County is not entitled to summary judgment on Counts I and II on procedural grounds. The Court therefore turns to the merits of those claims.

**II. IHRA Disability Discrimination**

When analyzing disability discrimination claims under the IHRA, Illinois courts apply the three-part test set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Van Campen v. IBM*, 326 Ill. App. 3d 963, 970 (Ill. App. Ct. 2001).

> First, the plaintiff must establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. Second, to rebut the presumption of unlawful discrimination, the employer must articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the employer establishes a legitimate reason, the plaintiff must prove that the reason was merely a pretext for unlawful discrimination.

*Id*. at 971.

To establish a *prima facie* case of disability discrimination under the IHRA, the first step, a plaintiff must prove: "(i) she was disabled within the definition of the IHRA; (ii) her disability is unrelated to her ability to perform the functions of the job she was hired to perform; and (iii) an adverse job action was taken against her *related to* her disability." *Kreczko v. Triangle Package Mach. Co.*, 53 N.E.3d 1070, 1078 (Ill. App. Ct. 2016) (emphasis added); *but cf*. *Van Campen*, 326 Ill. App. 3d at 971 (holding that a plaintiff must meet the higher standard of showing that "an adverse job action was taken against him *because of* the handicap[.]") (emphasis added).

*A. Causation*

Assuming without deciding that Bergman can make the required *prima facie* showing for the first two requirements, his argument still fails on the final prong: whether an adverse job action was taken against him related to his disability.

To begin, Bergman and the County disagree over which causation standard applies. Bergman suggests, albeit briefly, that he only needs to show that his disability was a "motivating factor" in his termination. (Doc. 40 at p. 21). The County rebuts that Bergman must meet the higher standard of showing that his disability was the "but for" reason for his firing. (Doc. 37 at p. 16). The parties' disagreement touches on what was an open question until somewhat recently.

Illinois courts analyze IHRA claims under "a framework that is practically indistinguishable from the ADA framework." *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) (citing *Fox v. Adams & Assocs.*, Inc., 166 N.E.3d 772, 783 (Ill. App. Ct. 2020)); *see also Hammond v. Cahokia Unit Sch. Dist. #187*, 2026 U.S. Dist. LEXIS 66590, at *16 (S.D. Ill. Mar. 27, 2026). Pre-2008, courts largely viewed the IHRA and ADA's causation requirement to demand a "but for" standard. *See Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020); *Monroe v. Ind. DOT*, 871 F.3d 495, 504 (7th Cir. 2017); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010).

However, in 2008, the ADA was amended "to change the language from prohibiting employers from discriminating 'because of' a disability to prohibiting employers from discriminating 'on the basis of' a disability." *Monroe*, 871 F.3d at 504; *see* 42 USCS § 12112 note (Amendment Notes to 2008). In 2023, the IHRA followed suit.

*See* 775 ILCS 5/1-102 (Amendment Notes) (replacing "because of" with "based on").

Beginning with the 2008 ADA amendment, courts grappled with whether to continue requiring a "but for" showing or whether something less than that would now suffice. See *Monroe*, 871 F.3d at 504 ("[I]t is an open question whether the change from 'because of' to 'on the basis of' changes the 'but for' causation standard"); *Kurtzhals*, 969 F.3d at 728 ("Nearly 12 years later, it remains an open question in [the Seventh Circuit] whether that change affects the 'but for' causation standard we apply in these cases.").

In 2021, the Seventh Circuit resolved the question. While explaining the Rehabilitation Act's strict causation standard, which requires that "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action[,]" the Seventh Circuit contrasted it with the ADA's, "which requires only that the plaintiff's disability be *a* reason for the challenged action." *Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (emphasis in original); *see also Royan v. Chi. State Univ.*, 145 F.4th 681, 689 (7th Cir. 2025); *Lewis v. Ind. DOT*, 173 F.4th 876, 883 (7th Cir. 2026) ("Several circuits share our view that § 504 has a stricter causation standard than the ADA's 'but for' standard . . . [under which a] disability [need only be] a motivating factor.").

Because Illinois courts generally analyze IHRA disability claims in parallel with ADA claims, and in light of the Seventh Circuit's recent discussion of ADA causation, the Court applies a motivating-factor standard to the IHRA claim here. However, even under the lower bar of this standard, Bergman's argument fails.

The County argues that the Court should grant summary judgment as to Count I

because Bergman has not identified sufficient evidence that his disability caused the termination. Rather, his termination occurred due to his "failure to provide the healthcare certification required by County policy for his absences from work, thereby incurring multiple unexcused absences in violation of the County Personnel Code," as well as other alleged performance reasons. (Doc. 37 at p.17).

Bergman's burden, then, is to offer enough specific facts that a reasonable jury could find his firing was motivated, at least in part, by his disability and not solely attributable to one of the varying reasons the County asserts. Bergman has not met this burden. Even drawing all inferences in Bergman's favor and considering all the evidence together, no reasonable jury could decide that his disability factored into his termination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

Bergman first suggests that the "timing" of his termination is suspicious. (Doc. 40 at p. 21). "Suspicious timing alone rarely establishes causation," but "suspicious-timing-plus can get a plaintiff over the summary judgment hurdle." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015) ("[I]f there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment."); *see also Malkowski v. Cleveland Corp.*, 2021 U.S. Dist. LEXIS 232861, at *41 (N.D. Ill. Dec. 6, 2021).

Here, Bergman supports his claim with evidence that one of Defendant's employees, Austin Thomas, heard from the County's new HR Manager sometime before

March 20, 2023, that Bergman was being "let go."[5] (Doc. 40 at p. 20). Thomas also heard that Bergman was on leave for an injured arm (*Id.*). These statements are hearsay, however, and the Court cannot consider them on summary judgment. *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023) (recognizing that a district court may not consider inadmissible hearsay on summary judgment). Without more than just Bergman's speculation about suspicious timing, no reasonable jury could infer causation.

Bergman also offers a variety of evidence suggesting that his delay in providing the health certification and his extended leave did not depart from the County's usual practices in handling FMLA leave. (Doc. 40 at p. 20). Specifically, he points to the fact that the County repeatedly extended the deadline for him to return his completed FMLA paperwork, the County did not indicate any problem with the documentation, and the County applied his accrued sick time and vacation time so that he continued to be paid during his leave. (*Id*. at 20-21). He also cites to the County's practice of allowing employees to take extended leave for medical issues. (*Id*. at 21). The natural inference Bergman invites the Court to draw is that since he followed the County's informal leave policies, the only remaining explanation for his termination is his disability (or, at the least, it was a motivating factor). But Bergman's argument fails because he did, in fact, deviate from the County's usual leave policies. It is undisputed that, based on the paperwork Bergman ultimately submitted, his 70-day absence from February 21 to May 1 remained undocumented and therefore unexcused under County policy. (Doc. 40-4 at

[5] Thomas's actual testimony, however, is that he learned Bergman was being let go through either the union rep, Bob Jones, or Herb Simmons. (Doc. 40-13 at p. 4).

48:20). While the County may have accepted FMLA paperwork retroactively to reclassify unexcused leave as excused leave, that is not Bergman's situation. His health certification only addresses and excuses his absence from May 2 onwards. (Doc. 40-2 at 4). His absence before that date was never excused, and Bergman does not present any evidence that taking unexcused leave was acceptable. Thus, no reasonable jury would draw the inference that Bergman abided by the County's leave policy such that his termination must be attributed, in whole or in part, to his disability.

*B. Pretext*

Even if Bergman had successfully established a *prima facie* case, he still cannot show a material factual dispute over whether the County's proffered reasons for his termination are merely a pretext for discrimination.

"An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness[.]" *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 854 (7th Cir. 2015) (citing *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013)). Focusing once again on the County's claim that it terminated Bergman because of his failure to submit the paperwork required to excuse his absence, Bergman has not sufficiently challenged the honesty of this explanation. This is particularly fatal for Bergman's claim because it is undisputed that he did, in fact, fail to excuse over two months of absence. (Doc. 40-4 at 48:20); *see also Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998) (noting that absenteeism is a "legitimate reason" to terminate an employee); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992) (explaining that an employer has a legitimate interest in its employee's attendance and reliability). And

though Bergman claims that the County did not warn him of this deficiency and its consequences, the record proves otherwise. (Doc. 40 at pp. 20, 26-27; Doc. 61-2 at pp. 221, 223-225).

In early April 2023, Moore reminded Bergman to submit his medical certification and cautioned him with the following:

> If we do not receive a fully completed Healthcare Provider Certification by Monday, April 14, 2023, [sic] we will assume that this time was not covered by FMLA and your absence will be considered unapproved. You will be subject to actions associated with unapproved absences of this level including discipline and *possible termination at that time*."

(*Id*. at p. 221) (emphasis added). On April 21, 2023, Moore advised Bergman that the medical certification he eventually submitted "does not provide the information needed to approve [his] request for FMLA" leave from February 21 to the beginning of May. (*Id*. at p. 223) She offered him one last extension to submit the appropriate documentation, and then concluded with another warning:

> Finally, thank you for letting me know that you do intend to return to your position. However, I am deeply concerned about how you have handled your leave. Your refusal to follow the policies that you advised on and enforced over the last 7 years indicates a lack of respect for the County's policies and procedures that you were responsible for and that you will be responsible for upon your return, which is unacceptable. Please do not continue to make the mistake of refusing to follow the policies of the County. *You have put your future employment with the County at risk*.

(*Id*. at p. 225) (emphasis added). Despite Moore's reminders and admonitions, Bergman willfully continued to violate the County's policies. It is little surprise then that the County followed through on its warning and terminated him. In light of these letters and without evidence to the contrary, no reasonable jury could conclude that the County's

proffered reason was dishonest.

Thus, Bergman has neither established a *prima facie* case nor created a triable issue regarding the honesty of the County's reliance on his violations of leave policy. Though the County also cites performance issues for Bergman's firing, Bergman's undocumented absences alone sufficiently support the termination decision. Thus, the Court grants summary judgment on Count I.

**III. IHRA Retaliation**

The IHRA prohibits retaliation against a person because that person has opposed illegal conduct. 775 ILCS 5/6-101(A). To establish a retaliation claim at summary judgment, a plaintiff must produce evidence that would allow a reasonable jury to conclude that: "(1) [he] engaged in an activity protected by the statute; (2) [he] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023) (citation omitted); *see Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 748 (7th Cir. 2021). Courts apply the same analysis to both Title VII and IHRA retaliation claims. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 n.2 (7th Cir. 2021); *Loos v. Cnty. of Perry*, 2023 U.S. Dist. LEXIS 176363, at *43 (S.D. Ill. Sep. 30, 2023).

The parties here do not dispute the second prong, so only the first and third remain at issue. However, even assuming without deciding that Bergman's internal investigations constituted protected activity under the IHRA, he has once again failed to sufficiently demonstrate a causal link between that activity and his termination.

Causation in the retaliation context demands a "but-for" showing. *See Eaton v. J. H.*

*Findorff & Son*, 1 F.4th 508, 511 (7th Cir. 2021). That "does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 918 (7th Cir. 2022) (citation and internal quotation marks omitted). Evidence that may be used to establish causation includes "suspicious timing." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023) (citation and internal quotation marks omitted); *Loos*, 2023 U.S. Dist. LEXIS 176363 at *44.

Much like in the disability discrimination context, however, suspicious timing is "rarely [] sufficient in and of itself . . . to get past a motion for summary judgment." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (internal citations and quotation marks omitted). "The reason is obvious: [s]uspicious timing may be just that—suspicious—and a suspicion is not enough." *Id*. For a plaintiff to succeed on suspicious timing, he must provide "[a]dditional corroborating evidence" to support the causal inference he is seeking. *Igasaki v. Illinois Department of Financial & Professional Regulation*, 988 F.3d 948, 960 (7th Cir. 2021).

This is especially important where the "circumstances provid[e] an alternative explanation for the challenged action" that tends to negate "any inference of causation supported by temporal proximity." *Jokich v. Rush University Medical Center*, 42 F.4th 626, 634-35 (7th Cir. 2022) (upholding summary judgment on a plaintiff's FMLA retaliation claim where the plaintiff's bare assertion of suspicious timing was not enough for a reasonable jury to infer retaliation. This was "especially so in light of the competing explanation that [defendant's employees] found [the plaintiff] difficult to work with,

which [the plaintiff] ha[d] not shown to be a pretext."); *see also Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 706 (7th Cir. 2024) (deciding similarly in light of the "alternate basis for [the plaintiff's] termination"—that he refused to comply with the defendant's required bias training).

Here, the County urges the Court to grant summary judgment on Count II because Bergman has not demonstrated that his protected activity was causally related to his termination. The Court agrees. Bergman has failed to show "but-for" causation, such that his termination "would not have happened without" his investigative activities. *Eaton v. J. H. Findorff & Son*, 1 F.4th 508, 511-12 (7th Cir. 2021); *Lesiv*, 39 F.4th at 918.

Bergman again claims that "the temporal proximity and circumstances surrounding the adverse actions support a reasonable inference of retaliation." (Doc. 40 at p. 26). He points to the following series of events to support his assertion: that Bergman had reported civil rights violations involving Jordin Simmons and other employees; that shortly thereafter, the County removed Bergman from the investigation; that the County then denied Bergman medical leave that others received; and finally, that the County terminated Bergman shortly before he was about to return to work. (*Id*. at 26-27).

Bergman's claim that he was removed from the investigation is unsupported by the record he cites to; in fact, the record indicates that the County was seeking his continued participation in the investigative process.[6] (Doc. 40-10 at p. 1). His claim that

[6] Bergman relies on a February 22, 2023 email from County counsel Sonni Nolan, subject-lined "EMA Investigation: *Next Steps*." (Doc. 40-10 at p. 1) (emphasis added). In it, Nolan asks Bergman to "send [Nolan] the documentation supporting each of the allegations put forward in the memo last week" so the investigation can move "forward." (*Id*.). Nolan explains that the documentation would be "provide[d] to the Chairman" and that a "meeting with Herb" would then be arranged. (*Id*.). She acknowledges that

he was denied medical leave is also unsupported by the record he cites to; and even if it were, Bergman's failure to submit medical certification excusing over two months of absence is a sufficient reason for the County to deny medical leave.

Bergman is then left with only two pieces of evidence: that he was investigating Simmons and other employees and that he was terminated a few months later. But temporal proximity is "rarely [] sufficient in and of itself . . . to get past a motion for summary judgment." *Kidwell*, 679 F.3d at 966. Here, Bergman does not bring any "additional corroborating evidence" beyond the alleged cause and effect to properly support a causal inference. *Igasaki*, 988 F.3d at 960.

Moreover, the County has offered "an alternative explanation" for Bergman's firing: his lengthy unexcused absence, which Bergman has not shown to be a pretext. *Jokich*, 42 F.4th at 634. "Thus, where a significant intervening event separate[es] an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail." *Kidwell*, 679 F.3d at 967 (citing to *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011)) (internal quotation marks omitted). Here, as discussed above, evidence indicates that Bergman's own repeated failure to comply with the County's leave policies caused his termination.

---

Bergman "know[s] this investigation better than anyone" and concludes, "[p]lease let us know what is feasible and then *we* can *all* figure out when the next meeting should be scheduled." (*Id.*) (emphasis added).

Even drawing all reasonable inferences in Bergman's favor, this email does not support the conclusion that the County was pushing him out of the investigation. To the contrary, it reflects the County actively seeking his cooperation to advance it. Moreover, because Bergman had already begun his leave when he received the email and could no longer participate in the investigation, the County would have had no practical reason to exclude him from it.

Summary judgment is granted on Count II.

## IV. FMLA Retaliation

For a plaintiff to establish an FMLA retaliation claim, he must demonstrate that "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1307 (7th Cir. 2022); *see Paterakos v. City of Chicago*, 147 F.4th 787, 800 (7th Cir. 2025).

In Count III, Bergman asserts that he was discharged in retaliation for exercising his FMLA rights. His claim fails, however, because he neglected to provide the required medical certification and therefore did not fulfill the requirements necessary to invoke FMLA protection.

When an employee takes leave without complying with his employer's "internal leave polic[ies]," he has not "engaged in any activity protected by the FMLA." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (upholding summary judgment on an FMLA retaliation claim because the employee failed to follow the company's internal policy of notifying the human resources department of FMLA leave); *see also Davis v. Ill. Dep't of Hum. Servs.*, 137 F.4th 641, 645 (7th Cir. 2025) (explaining that "[a]lthough FMLA's notice obligations are not onerous, an employee may be required to comply with the employer's [internal] usual and customary notice and procedural requirements for requesting time off.") (internal citations and quotation marks omitted). The Seventh Circuit "has recognized an employer's right to terminate employees" for their failure to abide by such policies. *Brown v. Auto. Components Holdings, LLC*, 622 F.3d 685, 691 (7th

Cir. 2010).

When Bergman failed to provide medical certification supporting his leave from February 21 to May 1, 2023, he violated the County's procedural requirements for requesting FMLA leave. As a result, his leave was not covered by the FMLA and he did not engage in FMLA-protected activity. The County therefore had a "right to terminate" Bergman's employment. *Brown*, 622 F.3d at 691.

Thus, Bergman's FMLA retaliation claim fails and the County is entitled to summary judgment on Count III.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant St. Clair County's Motion for Summary Judgment (Doc. 37). Plaintiff Frank Bergman shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 23, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**